IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK HANKIN and | : | CIVIL ACTION |
| HANMAR ASSOCIATES, MLP, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| JDS UNIPHASE CORPORATION, | : | NO. 11-3149 |
|     Defendant. | : | |

**M E M O R A N D U M**

GENE E.K. PRATTER, J.                                                          NOVEMBER 6, 2012

Plaintiffs Mark Hankin and Hanmar Associates, MLP ("Hanmar") and Defendant JDS Uniphase Corporation ("JDSU") participated in a 2010 arbitration regarding a dispute in their landlord-tenant relationship. Hanmar subsequently filed a petition to partially confirm and partially vacate the arbitration award. In response, JDSU removed the petition to this Court and filed a cross-motion to confirm the award in its entirety. For the following reasons, the Court grants JDSU's motion, and grants in part and denies in part Hanmar's petition.

**I.  Factual Background**

In 2010, a dispute arose between Hanmar (a landlord) and JDSU (its tenant) regarding the parties' respective obligations under their lease. The lease required Hanmar and JDSU to arbitrate disputes through a proceeding overseen by the American Arbitration Association (AAA), and provided for a so-called "baseball"-style arbitration that required the arbitrator to choose between the competing proposed awards of the parties. Specifically, Section 38 of the lease states that disputes shall "be submitted to final and binding Arbitration in the American Arbitration Association" and requires that the following standards "shall supplement the regulations of the [AAA] and shall control" in the event of a conflict with AAA rules:

1

    (i)       The aggrieved party shall request arbitration after the dispute arises and promptly serve notice of submission to the other party;

           (a)       The above notwithstanding, the Lessee shall be required to request such arbitration no later than thirty (30) days after the dispute arises and failure by Lessee to make such timely request shall be deemed to be a waiver of Lessee's rights, hereunder and full award shall be granted to Lessor;

    (ii)      Within twenty (20) days of submission, each party shall submit a proposed award ("Proposed Award") to the American Arbitration Association, each individual item of dispute may be submitted as a separate item of dispute for decision making purposes, even though they may be submitted under the same arbitration hearing;

    (iii)     The arbitrator shall have jurisdiction, only, to enter, as an award, the Proposed Award of one or the other party, together with all amounts payable under Paragraph 38(a)(iv), *infra*., and may not make any other award or finding;

    (iv)     All costs and expenses of the arbitration shall be paid by the non-prevailing party and shall be added to the award.  Each party shall bear their own counsel fees, except that if the arbitration is brought by Lessor as a result of a default by Lessee and Lessor shall prevail in the arbitration, Lessee shall reimburse Lessor for all expenses, including reasonable attorney's fees in the same manner as provided in Paragraph 20(I) hereof, which shall be added to the award;

    (v)      In the event that the non-prevailing party does not make the required payment(s) within ten (10) days of the arbitration, the prevailing party shall have the right to confess judgment as provided in Paragraph 20 hereof.

On April 29, 2010, Hanmar filed a demand for arbitration with AAA and alleged that JDSU owed it unpaid rent.  On May 13, JDSU filed a jurisdictional challenge to the arbitration.  Five days later, Hanmar filed a proposed arbitration award with AAA.

On June 9, 2010, JDSU withdrew its jurisdictional challenge and filed an Answering Statement and Counterclaims with AAA.  JDSU's first counterclaim alleged that Hanmar overcharged it under the lease, while its second counterclaim sought declaratory relief regarding its obligations to restore the premises of the leased property.  Hanmar subsequently presented four additional proposed awards to AAA, and JDSU presented its proposed award to AAA on July 30.

On August 5, Hanmar filed a brief with the arbitrator and argued that the arbitrator could not consider JDSU's proposed award because it was not presented within the requisite 20-day period established by the lease. Additionally, Hanmar argued that JDSU's counterclaims were untimely because they were not submitted within 15 days of JDSU receiving notice of the arbitration. After receiving JDSU's opposition brief, the arbitrator rejected Hanmar's arguments. The arbitrator held that he could consider the proposed award because the lease failed to address what should happen if a proposed award was submitted in an untimely manner, and because AAA rules disfavor awards based on the default of a party. Moreover, the arbitrator interpreted AAA rules to allow JDSU to file a counterclaim more than 15 days after receiving notice of the arbitration.

On November 29, 2010, the first day of a four-day arbitration hearing, the arbitrator allowed Hanmar to reargue the jurisdictional issues it previously discussed in its August 5 brief. On February 7, 2011, Hanmar submitted a post-hearing brief in which it contended that the arbitrator was jurisdictionally bound to enter the award proposed by Hanmar and to dismiss JDSU's counterclaims, given that JDSU failed to timely submit its second counterclaim within 30 days of a dispute arising, failed to timely submit both of its counterclaims within 15 days of receiving notice of the arbitration, and failed to timely submit its proposed award. The arbitrator rejected all these contentions, and instead issued an award on April 6 in which he reached the merits of the parties' dispute and found for both parties on their respective claims.

## II.  Discussion

Congress enacted the Federal Arbitration Act ("FAA") "to overcome judicial resistance to arbitration." *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 508 (E.D. Pa. 2008) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).  Section 9 of

the FAA authorizes federal district courts to confirm arbitration awards.  9 U.S.C. § 9.  However, § 10(a)(4) of the FAA allows courts to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  Hanmar seeks to vacate the arbitration award based on § 10(a)(4).[1]

The Third Circuit Court of Appeals has held that "[t]here is a strong presumption under the Federal Arbitration Act . . . in favor of enforcing arbitration awards," and that "an award is presumed valid unless it is affirmatively shown to be otherwise[.]"  *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005).  Therefore, "[r]eview of arbitration awards under the FAA is 'extremely deferential,' [and v]acatur is appropriate only in 'exceedingly narrow' circumstances[.]"  *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 578 (3d Cir. 2005) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)).  Furthermore, "the Court's role in reviewing the outcome of arbitration proceedings is not to correct factual or legal errors made by an arbitrator and courts should not re-weigh the evidence to decide whether to vacate the award."  *Southco*, 556 F. Supp. 2d at 510 (citing *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F. 3d 272, 279 (3d Cir. 2004) and *Hruban v. Steinman*, No. 00-4285, 2001 U.S. Dist. LEXIS 4906, at *6 (E.D. Pa. Apr. 19, 2001)).

*A.  The Timeliness of Both Counterclaims*

Here, Hanmar presents five arguments as to why the Court should partially vacate the arbitration award under § 10(a)(4).  First, Hanmar argues that the arbitrator impermissibly

---

[1] Hanmar's briefing also occasionally refers to § 11(b) of the FAA, which allows courts to modify arbitration awards if "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted."  9 U.S.C. § 11(b).  However, Hanmar does not argue that it should prevail under § 11(b) even if the Court found that its arguments failed under § 10(a)(4).

considered JDSU's counterclaims even though they were not filed within 15 days of JDSU receiving notice of the arbitration. Hanmar supports this argument by interpreting Rule 4(b) of the AAA Commercial Arbitration Rules to establish a 15-day deadline for counterclaims. However, the arbitrator used a different interpretation and found that, based on the text of both Rule 4(b) and Rule 6, the AAA rules merely permit a respondent to file a counterclaim within the 15-day period, without requiring it to do so. The arbitrator noted that Rule 4(b) stated that respondents "may" file counterclaims within 15 days, not that they "shall" do so, and that Rule 6 did not prescribe a time limit for filing counterclaims.

An arbitrator "subjects his award to judicial vacatur under § 10(a)(4)[] when he decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219-20 (3d Cir. 2012) (citation omitted). An irrational award has "absolutely no support at all in the record justifying the arbitrator's determinations." *See Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 295 (3d Cir. 2010) (internal quotation omitted). The arbitrator's decision regarding the applicability of a 15-day deadline for counterclaims is not irrational within the fair scope of the stated standard. While Hanmar may disagree with the arbitrator's interpretation of the AAA rules, the arbitrator grounded that interpretation in the text of both Rule 4(b) and Rule 6. Therefore, the Court will not vacate the arbitrator's award because he decided that JDSU timely filed its counterclaims.

## B. The Timeliness of the Second Counterclaim

Hanmar also contends that JDSU's second counterclaim was untimely for a different reason. The Section 38.A.(i)(a) of the parties' lease required JDSU "to request . . . arbitration no

later than thirty (30) days after [a] dispute arises" and stated that JDSU's failure "to make such timely request shall be deemed to be a waiver of [its] right[]" to arbitration.  During the arbitration hearing, a JDSU employee testified that the company "first realize[d] that restoration was going to be an issue *or* dispute *or* problem" by the end of the first quarter of 2010.  However, JDSU did not file its counterclaim relating to its restoration obligations until June 9, 2010.  Because this date falls more than 30 days after JDSU knew that restoring the premises "was going to be an issue," Hanmar argues that JDSU waived its right to arbitrate this issue and, by extension, that the arbitrator erred by considering JDSU's second counterclaim.

The Court finds that the arbitrator's decision on the timeliness of JDSU's second counterclaim can be "rationally derived . . . from the agreement between the parties" and is not "completely irrational."  *Southco*, 556 F. Supp. 2d at 511 (internal quotation omitted).  The testimony that Hanmar relies on merely establishes that "an issue *or* dispute *or* problem" existed between the parties in early 2010.  The arbitrator could have rationally concluded that a *potential* dispute regarding JDSU's restoration obligations arose at this time, and that a mere potential dispute did not and should not trigger the 30-day deadline of Section 38.A(i)(a), lest litigiousness be encouraged at the first hint of a dispute.  Likewise, the arbitrator could have interpreted the 30-day deadline to only apply to requests that initiate arbitration, not counterclaims.  The arbitrator thus had rational reasons for concluding that JDSU timely filed its second counterclaim, and the Court will not vacate his award because he reached such a conclusion.

## C.  *The Timeliness of the Proposed Award*

Third, Hanmar seeks to vacate the arbitrator's award based on when JDSU submitted its proposed award.  The parties' lease provided that "[w]ithin twenty (20) days of submission [of a dispute], each party shall submit a proposed award," and also stated that "[t]he arbitrator shall

have jurisdiction, only, to enter, as an award, the Proposed Award of one or the other party . . . and may not make any other award or finding[.]" Hanmar notes that JDSU submitted its proposed award more than 20 days after filing its counterclaims. Hanmar then argues that, because JDSU's proposed award was untimely, only Hanmar's proposed awards were actually before the arbitrator, who erred by not entering them.

Hanmar confuses the timeliness of a proposed award with the existence of such an award. Section 38 of the lease did *not* limit the definition of a proposed award to an award submitted within a 20-day period. Instead, it merely required Hanmar and JDSU to submit their awards within 20 days for those awards to be considered timely. As the arbitrator correctly noted in his August 19 opinion, the arbitration agreement did not specify what should happen if a party submitted an untimely proposed award. The decision regarding how to treat JDSU's untimely award was thus left to the arbitrator's discretion, and the Court will not use § 10(a)(4) to disturb his rational decision. *See Ario*, 618 F.3d at 295-96.

### D. The Scope of the Arbitrator's Award

Fourth, Hanmar argues that the Court must vacate the arbitrator's award on JDSU's second counterclaim because it exceeded the scope of the issues presented by that counterclaim. *See Sutter*, 675 F.3d at 219 ("An arbitrator . . . subjects his award to judicial vacatur under § 10(a)(4)[] when he decides an issue not submitted to him."). In its second counterclaim, JDSU stated that it was "finalizing a detailed scope of work which it believes will satisfy its obligations [to restore the premises] under . . . the Lease," and that it would "file the scope of work with the AAA as part of this Count and, after discovery, will seek an Award that its scope of work satisfies its obligations under the Lease." JDSU subsequently filed a scope of work that set forth its proposal for restoring the premises, and then filed a proposed award on its second

counterclaim. The proposed award, which the arbitrator eventually adopted, found "in favor of JDSU . . . on Count II of the counterclaim for declaratory relief, declaring that JDSU satisfied all of its obligations under the parties' commercial lease[.]"

Hanmar contends that the arbitrator decided an issue that the parties did not submit to him by finding that JDSU satisfied "all of its obligations" under the lease, when the second counterclaim only asked him to address JDSU's obligations to restore the premises. However, JDSU reads the arbitrator's award differently and argues that it only pertains to JDSU's restoration obligations, not all its obligations under the lease.

In *UPS v. Int'l Bhd. of Teamsters, Local Union No. 430*, 55 F.3d 138 (3d Cir. 1995), the plaintiff sought to vacate an arbitrator's award and argued "that the arbitrator exceeded the contractual limitations on his authority by ruling on an issue not submitted for arbitration[.]" *Id.* at 140. The Third Circuit Court of Appeals rejected the plaintiff's argument. *Id.* at 142. The court held that one reasonable interpretation of the arbitrator's award limited its scope to the issue presented, and that "given two reasonable interpretations of the award, only that which is within the authority of the arbitrator will be enforceable." *Id.*

Here, the arbitrator's award did state that JDSU "satisfied all of its obligations" under the lease, but it also stated that it found "in favor of JDSU . . . *on Count II of the counterclaim.*" Count II addressed JDSU's restoration obligations, not all of its obligations under the lease. Given this context, one could reasonably interpret the award as a finding that JDSU satisfied all of its *restoration* obligations. Moreover, *UPS* directs the Court to credit a reasonable interpretation of the award if such an interpretation would keep the award "within the authority of the arbitrator." *Id.* Therefore, the Court finds that the arbitrator's award did not address

whether JDSU fulfilled its non-restorative obligations, and the Court will not vacate the award based on how Hanmar has interpreted it.

Hanmar alternatively argues that arbitrator exceeded his authority because JDSU's second counterclaim asked the arbitrator to define the *scope* of its restorative obligations, whereas the arbitrator's award addressed whether JDSU *satisfied* those obligations.  In other words, Hanmar contends that the arbitrator was limited to giving a declaratory judgment as to JDSU's obligations, but instead found that JDSU met those obligations.  Assuming, *arguendo*, the validity of this contention, the Court notes that "several courts, including the Third Circuit, have recognized that 'harmless' or 'trivial' instances of an arbitrator overstepping his or her authority do not justify vacatur under Section 10(a)(4)." *Stone v. Bear, Stearns & Co.*, No. 11-5118, 2012 U.S. Dist. LEXIS 74703, at *43-44 (E.D. Pa. May 29, 2012) (citing *Brentwood*, 396 F.3d at 241-43 and *R.J. O'Brien & Assoc. v. Pipkin*, 64 F.3d 257, 263 (7th Cir. 1995)).  Here, no material difference exists between what JDSU asked for in its counterclaim and what the arbitrator awarded.  JDSU sought declaratory relief that its proposed work complied with the lease, and the arbitrator found that JDSU complied with the lease by carrying out its proposal. This approach did not harm Hanmar, which had ample opportunity at the four-day hearing to present evidence regarding whether JDSU fulfilled its restoration obligations.  In fact, Hanmar devoted nine pages of its post-hearing brief to discussing evidence about JDSU's restoration activities, and its briefing admitted that "the testimony over JDS's restoration consumed the most time and testimony" at the hearing.  Therefore, even if the arbitrator's award slightly deviated from the format called for by Hanmar's second counterclaim, such a deviation was both "trivial" and "harmless" and does not constitute a basis for vacatur under § 10(a)(4).  *See Stone*, 2012 U.S. Dist. LEXIS 74703 at *43-44.

*E. Attorneys' Fees, Costs, and Interest*

Finally, Hanmar challenges the manner in which the arbitrator awarded attorneys' fees, costs, and interest. The parties' lease provides that the "costs and expenses of the arbitration shall be paid by the non-prevailing party" and that "[e]ach party shall bear their own counsel fees, except that if the arbitration is brought by Lessor as a result of default by Lessee and Lessor shall prevail . . . Lessee shall reimburse Lessor for all expenses, including reasonable attorney's fees." Given this language, the arbitrator reasonably found that the parties should split the costs and expenses of arbitration since each qualified as a "non-prevailing party." Additionally, the arbitrator rationally interpreted the lease's attorneys' fees provision to apply only to fees related to the claim "brought by [the] Lessor [Hanmar] as a result of default by [the] Lessee [JDSU]."[2] These decisions were within the sound discretion of the arbitrator, and the Court will not disturb his decision.[3]

---

[2] At oral argument, Hanmar admitted that the arbitrator did not have to pick between the parties' competing positions on attorneys' fees, as the award of such fees was not subject to baseball-style arbitration.

[3] Hanmar also argues that the arbitrator overstepped his authority by failing to award interest in accordance with Section 4(D.) of the lease. However, prior to the arbitrator's decision, Hanmar never argued that Section 4(D.) governed the awarding of interest in this matter. Because the issue of interest never reached the arbitrator, Hanmar cannot now use the issue as a basis for altering his award. *See Metromedia*, 409 F.3d at 578 ("[A]n arbitration panel has the authority to decide only the issues that have been submitted for arbitration by the parties.") (citation omitted).

### III.  Conclusion

For the foregoing reasons, the Court grants JDSU's motion to confirm the arbitration award, and grants in part and denies in part Hanmar's petition to partially vacate the award. An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge
